UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESA ENTERPRISES LTD,

              Plaintiff,                      Case Number 16-10885

v.                                                  Honorable David M. Lawson

THERMOFLEX CORPORATION,

              Defendant,

and

THERMOFLEX CORPORATION,

              Third-Party Plaintiff,

v.

SILAGY MURDOCH GROUP, INC., SILAGY
MURDOCH GROUP LLC, and JESA
ENTERPRISES LTD,

              Third-Party Defendants.
_____/

**OPINION AND ORDER DENYING MOTION TO DISMISS AND
GRANTING LEAVE TO FILE AN AMENDED COMPLAINT**

Plaintiff Jesa Enterprises, a sales representative, brought this breach of contract action against component manufacturer Thermoflex Corporation to recover commissions for the sale of Thermoflex's products over the entire "life of the part." Jesa seeks damages and a declaratory judgment. Thermoflex has filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), raising a defense under the Statute of Frauds and contending that the complaint does not allege sufficient facts to support a breach of contract claim. The Court heard oral argument on August 16, 2016. Because the Statute of Frauds does not bar the claim, and the complaint includes enough facts to state a plausible claim for relief, the Court will deny the motion. In addition, the parties informed

the Court that their relationship has changed since this case commenced, and that the plaintiff would like to amend its complaint. The defendant did not object, and the Court will permit an amended complaint to be filed.

I.

According to the complaint, Jesa Enterprises, incorporated in Michigan, entered into an "express and/or implied" agreement in 1986 with Thermoflex, an Illinois corporation, to act as sales representative for Thermoflex by soliciting new customers to purchase the products Thermoflex manufactured. In return, Thermoflex "expressly and/or impliedly" agreed to pay "life of the part" commissions for the sales Jesa secured. Throughout their relationship, the parties mutually agreed upon the commission rate to be applied to the business Jesa procured for Thermoflex. At some unspecified point, Thermoflex reduced the sales commission rate without Jesa's consent and refused to pay the agreed upon sales commissions. As a result of Thermoflex's breach, Jesa claims to have incurred damages in excess of $75,000. Jesa seeks judgment against Thermoflex for damages it suffered from the breach as well as costs, interest, and attorneys' fees. Jesa also seeks a declaratory judgment to determine the sales commissions that Thermoflex should pay going forward.

Jesa filed its complaint in this Court earlier this year. Thermoflex responded with its motion to dismiss, and also filed a counterclaim against Jesa for unjust enrichment, breach of fiduciary duty, and tortious interference with an existing business relationship. Thermoflex also filed third-party complaints against Silagy Murdoch Group, Inc. and Silagy Murdoch Group-LLC — entities apparently related to Jesa — for breach of fiduciary duty, and tortious interference with an existing business relationship.

II.

The defendant's motion is brought under Federal Rule of Civil Procedure 12(b)(6). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). Under Rule 12(b)(6), the complaint is viewed in the light most favorable to the plaintiff, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Columbia Nat'l Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995); *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 488 (6th Cir. 2009). "To survive a motion to dismiss, [a plaintiff] must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Under the new regime ushered in by *Twombly* and *Iqbal*, pleaded facts must be accepted by the reviewing court, but conclusions may not be accepted unless they are plausibly supported by the pleaded facts. "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, can provide context to the factual allegations, but are

insufficient to state a claim for relief and must be disregarded. *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555). However, as long as a court can "'draw the reasonable inference that the defendant is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Fabian*, 628 F.3d at 281 (quoting *Iqbal*, 556 U.S. at 678).

The plaintiff brought its claim under state law, invoking th Court's diversity jurisdiction. The parties do not dispute that Michigan substantive law furnishes the rules for decision in this case. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938) (holding that in diversity cases brought under state law, a federal court must apply the substantive law of the forum state's highest court). If the state's highest court has not decided an issue, then "the federal court must ascertain the state law from 'all relevant data,'" *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995) (quoting *Bailey v. V. & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985)), which can include "the state's intermediate appellate court decisions, as well as the state supreme court's relevant *dicta*," *Ososki v. St. Paul Surplus Lines*, 156 F. Supp. 2d 669, 674 (E.D. Mich. 2001) (internal quotation marks and citation omitted).

A.

Thermoflex argues first that the agreement would take more than one year to perform, and because Jesa has not alleged that the agreement is in writing, it is barred by Michigan's Statute of Frauds. Under Michigan law, a contract that, "by its terms, is not to be performed within 1 year from the making of the agreement," must be in writing and signed by the party against whom enforcement is sought. Mich. Comp. Laws § 566.132(1)(a). However, "[t]he mere fact that the contract may or may not be performed within the year does not bring it within the statute [of frauds]." *Dumas v. Auto-Club Ins. Ass'n*, 437 Mich. 521, 533, 473 N.W.2d 652, 657 (1991)

(citations omitted). It is generally recognized that "if, by any possibility, [the agreement] is capable of being completed within a year, it is not within the statute [of frauds]." *Ibid.*

"Life of the part" agreements are common among parts suppliers and sales representatives in the automotive industry. They are used to secure the payment of commissions to a sales representative who makes the initial sale of a component part to a buyer, such as an automobile manufacturer. *Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 502 (6th Cir. 1995). The rationale for such agreements was described well by the *Kingsley* court as "a common practice in the automobile industry because the sales representative must invest a great deal of time, effort, and money in securing the initial sale." *Id.* at 502 n.5. The court explained:

> Once the initial sale is made, the buyer may continue to use the part in the manufacture of its automobiles for many years. As many of the parts manufactured . . . are functional items, . . . the buyer may use the same part for many model years. Even after the buyer discontinues use of such part, sales will continue for repair and replacement parts. Thus, to guard against opportunistic termination, in which the manufacturer terminates the sales representative to avoid having to pay commission on future sales, the independent sales representatives inserted "life of the part" provisions in their agreements, requiring that commissions continue to be paid despite termination.

*Ibid.*

The purpose of such an agreement, then, is to protect the representative's commissions well into the future, and it is fair to say that the parties would contemplate the arrangement continuing well beyond a year. Nonetheless, an oral agreement is not within the Statute of Frauds "even though it is clear that the parties may have intended and thought it probable that it would extend over a longer period and even though it does so extend." *Drummey*, 115 Mich. App. at 111, 320 N.W.2d at 312.

Thermoflex argues that it could not *terminate* the contract unilaterally within one year, and therefore the Statute of Frauds applies. But that is not the test. The statute of frauds does not bar enforcement of the oral agreement Jesa alleged in its complaint because it is possible that the "life of the part" agreement could be *performed* within one year. For example, in the automobile industry, a manufacturer typically agrees to purchase a part by placing a blanket purchase order, and then issuing releases for certain volume purchases of the part. A sales representative — Jesa — could procure a blanket purchase order, and within a year the manufacturer could change specifications, discontinue production of that model, find a cheaper supplier, or (perish the thought) file for bankruptcy and go out of business. In each of those cases, Thermoflex would pay Jesa its commission based on the releases it received, and both parties would have completely fulfilled their contractual obligations within the year's time.

Of course, it would be in the interest of both parties that the sales representative agreement would continue well into the future. But because there is a "possibility" that the agreement "is capable of being completed within a year," *Dumas*, 437 Mich. at 533, 473 N.W.2d at 657, the Statute of Frauds in no defense to the present claim.

B.

Thermoflex also argues that the complaint does not allege sufficient facts to establish that it entered into an enforceable contract with Jesa, because it does not specify necessary elements and contractual terms, including whether the agreement was express or implied, to which customers the agreement applied, the agreed upon commission rates, to which parts and products the agreement applied, how the agreement could be terminated, and choice of law to govern the agreement. Thermoflex asserts that life-of-the-part agreements must contain those specific elements, citing

*Kingsley Associates, Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d at 502 n.5, and *Kingsley Associates, Inc. v. Del-Met, Inc.*, 918 F.2d 1277, 1278 (6th Cir. 1990), in support.  Neither decision applies such a test; instead, they both apply basic Michigan contract law.

Under Michigan law, the elements of a valid contract are "(1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation."  *A.F.T. v. State of Michigan*, 497 Mich. 197, 235, 866 N.W.2d 782, 804 (2015) (citations omitted).  The defendant's motion appears to focus only on elements (3), (4), and (5).

The complaint avers that the agreement was supported by legal consideration.  Under the agreement, Jesa was to solicit customers for Thermoflex in exchange for commission fees.  Jesa provided a service — soliciting business for Thermoflex — and Thermoflex received the benefit of increased sales.  "To have consideration there must be a bargained-for exchange.  There must be 'a benefit on one side, or a detriment suffered, or service done on the other.'"  *General Motors Corp. v. Department of Treasury, Revenue Division*, 466 Mich. 231, 239, 644 N.W.2d 734, 738 (2002). The complaint contains facts that establish this element.

To establish mutuality of agreement, a plaintiff must show "a 'meeting of the minds' on all the essential terms."  *Kamalnath v. Mercy Mem'l Hosp. Corp.*, 194 Mich. App. 543, 548, 487 N.W.2d 499, 503 (1992).  According to Jesa, each party understood what it would receive under the agreement.  Jesa would receive commission fees in exchange for soliciting business; Thermoflex would pay Jesa commission fees when Jesa secured new customers.  The parties also agreed to update the commission rates periodically by mutual agreement.  Jesa has alleged that the parties had agreed to the "life of the part" term because Thermoflex paid commissions for sales Jesa had procured from 1986 until the dispute in question.  "A meeting of the minds is judged by an objective

standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Heritage Broad. Co. v. Wilson Commc'ns, Inc.*, 170 Mich. App. 812, 818, 428 N.W.2d 784, 787 (1988) (citing *Siegel v. Spinney*, 141 Mich. App. 346, 350, 367 N.W.2d 860, 862 (1985)). The plaintiff has pleaded facts in the complaint to establish this element.

If consideration supports an agreement, there is mutuality of obligation. *Hall v. Small*, 267 Mich. App. 330, 335, 705 N.W.2d 741, 744 (2005). The complaint establishes mutual obligations because the agreement was supported by consideration. Jesa was to solicit customers for Thermoflex in exchange for commission fees. As shown above, such an exchange constitutes legal consideration in Michigan. Because the agreement is supported by legal consideration, Jesa has met the mutuality of obligation requirement.

Thermoflex also asserts that Jesa did not include enough detail about the content of the contract in its complaint. In Michigan, "judicial avoidance of contractual obligations because of indefiniteness is not favored, and so when the promises and performances of each party are set forth with reasonable certainty, the contract will not fail for indefiniteness." *Calhoun County v. Blue Cross Blue Shield Michigan*, 297 Mich. App. 1, 14, 824 N.W.2d 202, 210 (2012) (citing *Nichols v. Seaks*, 296 Mich. 154, 159, 295 N.W. 596 (1941)). Although Jesa's complaint does not specify whether the agreement was express or implied, and does not state the agreed upon commission rates or list the customers or parts that were covered by their agreement, the promises and performances of each party were clear in light of the typical "life of the part" agreements in the automotive industry, *Moll PlastiCrafters, Inc.*, 65 F.3d at 502 n.5, and the length of the parties' business relationship,

Jesa's complaint has established the necessary elements of a contract under Michigan law, and alleges adequately that the parties entered into a legally binding agreement.

C.

Thermoflex also contends that the complaint fails to allege a breach, reasoning that it did not breach the contract because their agreement was for an indefinite term and contracts for an indefinite term are terminable at will. It is true that in Michigan, contracts of indefinite duration are terminable at will unless the agreement specifies a particular manner for terminating the agreement. *Lichnovsky v. Ziebart Int'l Corp.*, 414 Mich. 228, 240-41, 324 N.W.2d 732, 738-39 (1982).

Jesa did not allege that the contract was for a specified time period or that it contained provisions specifying the manner of its termination. However, Jesa did allege that the agreement called for commissions to be paid over "the life of the part." Under "life of the part" agreements, a manufacturer must continue to pay commission fees to a sales representative even if the manufacturer has terminated the relationship. *Kingsley Assocs., Inc.*, 65 F.3d at 502. As noted above, sales representatives insist on "life of the part" agreements to protect themselves from "opportunistic termination." *Id.* at 502 n.5.

The complaint alleges that Thermoflex did not pay the agreed-upon commissions. "If a valid contract is made and entered into, and one party thereto refuses to perform it, such refusal amounts to a breach of contract." *Thompson v. Auditor General*, 261 Mich. 624, 634, 247 N.W. 360, 364 (1933). That element is satisfied in this case.

D.

Finally, Thermoflex contends that Jesa's request for a declaratory judgment must be dismissed because the breach of contract damage claim fails. As note above, the Court finds otherwise.

Federal district courts may issue declaratory judgments, which "shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a). Declaratory judgments are often pursued to determine parties' contractual obligations. "[W]here there is controversy as to the meaning and effect of a written contract[,] interpretation may be sought from and made by the declaratory judgment of a court having jurisdiction over the parties." *Panhandle Eastern Pipe Line Co. v. Michigan Consol. Gas Co.*, 177 F.2d 942, 944 (6th Cir. 1949). "[I]t is generally held that [declaratory judgment] actions are not limited to the interpretation of written instruments and that judgments may be granted declaring the existence of an oral contract or the rights of the parties thereunder." 22A Am. Jur. 2d Declaratory Judgments § 118 (2016).

The plaintiff's declaratory judgment count is not subject to dismissal at this stage of the case.

III.

The complaint states claims for which relief can be granted. The claims are not barred by the Statute of Frauds. At oral argument, the parties informed the Court that the defendant terminated its business relationship with the plaintiff, and that the plaintiff would like to amend the complaint to include another count for damages. The defendant has no objection to the amendment. However, because the present complaint contains the bare minimum of factual allegations necessary to survive a dismissal motion, the plaintiff is well advised to provide more detail in its amended pleading.

Accordingly, it is **ORDERED** that the motion to dismiss [dkt. #7] is **DENIED**.

It is further **ORDERED** that the plaintiff may file an amended complaint, provided it does so **on or before August 30, 2016**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: August 17, 2016

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 17, 2016.

s/Susan Pinkowski
SUSAN PINKOWSKI